**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF TEXAS**

GRACIE MARSHALL, on Behalf of the
Estate of LARRY WADE,

        Plaintiff,

    vs.

FANNIN COUNTY HOSPITAL
AUTHORITY D/B/A INTERLOCHEN
HEALTH AND REHABILITATION
CENTER; ARLINGTON I
ENTERPRISES, LLC; CREATIVE
SOLUTIONS IN HEALTHCARE, INC.

        Defendants.

**Civil Action No.:** 4:25-cv-1032

## PETITION

AND NOW, comes the Plaintiff, Gracie Marshall, on Behalf of the Estate of Larry Wade, by and through her undersigned counsel, Jessica Foster, Esquire and Brad Needham, Esquire; and the law firm of Smith Clinesmith, LLP, and files this Petition for Defendant's violation of duties imposed upon it under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, *et al.*; and the implementing regulations found at 42 C.F.R. §483, *et al.*, against Defendants Fannin County Hospital Authority d/b/a Interlochen Health and Rehabilitation Center, Arlington I Enterprises, LLC, and Creative Solutions in Healthcare, Inc., hereinafter referred to as "Defendants".

### Nature of Action

1. This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act;

the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify the aforementioned statutes.

## Jurisdiction and Venue

2.      As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C §1331.

3.      Venue lies within this judicial district, since all of the actions complained of herein occurred within the Northern District of Texas.

## Parties

4.      Plaintiff Gracie Marshall is an adult who resides at 2650 South Forum Drive, Grand Prairie, TX 75052.

5.      Gracie Marshall is the sister of Plaintiff's Decedent Larry Wade.

6.      Larry Wade died on June 8, 2024.

7.      Gracie Marshall is in the process of being appointed Administrator of the Estate of Larry Wade.

8.      Plaintiff brings this action as the personal representative of the Estate of Larry Wade.

9.      Defendant Fannin County Hospital Authority d/b/a Interlochen Health and Rehabilitation Center is a county hospital with its offices located at 615 N Ware Rd., McAllen, TX 78501.

10.      Defendant Fannin County Hospital Authority, as a governmental agency, at all times relevant hereto, was acting under the color of state law.

11.      Defendant Fannin County Hospital Authority owns and operates Interlochen Health and Rehabilitation Center ("Interlochen"), which is a skilled nursing facility located at 2645 West Randol Mill Rd., Arlington, TX 76012.

12.      The Interlochen facility is owned and operated by Defendant Fannin County

2

Hospital Authority. Defendant Fannin County Hospital Authority is proper party Defendant to this matter.

13. At all relevant times hereto, Interlochen operated as a long- term care nursing facility.

14. At all times relevant hereto, Defendant Fannin County Hospital Authority operated Interlochen as a "skilled nursing facility," as that term is defined in 42 U.S.C. §1395i-3.

15. At all times relevant hereto, Interlochen was acting under the control of Fannin County Hospital Authority, and by and through its duly authorized agents and/or employees who then and there acting within the course and scope of their employment.

16. Defendant Fannin County Hospital Authority is a county government organized and existing under the laws of the State of Texas. At all times relevant hereto, Defendant Fannin County Hospital Authority, acting through Interlochen, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to Interlochen and was responsible for the appointment, training, supervision, and conduct of all Interlochen personnel. In addition, at all relevant times, Defendant Fannin County Hospital Authority was responsible for enforcing the rules of Interlochen facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the State of Texas.

17. Defendant Arlington I Enterprises, LLC can be served via its statutory agent c/o Heather Gee, 4150 International Plaza, Suite 200, Fort Worth, TX 76109.

18. At all times relevant to this Complaint, Arlington I Enterprises, LLC owned, managed, operated, supervised, and/or staffed Interlochen

19. Defendant Creative Solutions in Healthcare, Inc. can be served via its statutory

3

agent c/o Heather Gee, 4150 International Plaza, Suite 200, Fort Worth, TX 76109.

20.     At all times relevant to this Complaint, Creative Solutions in Healthcare, Inc. owned, managed, operated, supervised, and/or staffed Interlochen

21.     Defendants Fannin County Hospital Authority, Arlington I Enterprises, LLC, and Creative Solutions in Healthcare, Inc. are hereinafter collectively referred to as "Defendants".

22.     At no point has suit been brought by or on behalf of Larry Wade for wrongful death.

**Statement of Claims**

23.     All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

24.     Larry Wade (herein "Mr. Wade") was 62 years old when he was first admitted to Interlochen on December 1, 2023 for long-term skilled nursing services.

25.     Mr. Wade's admitting diagnoses included essential (primary) hypertension, type 2 diabetes mellitus without complications, personal history of transient ischemic attack and cerebral infarction without residual deficits, unspecified convulsions, tachycardia, dysphagia, hemiplegia, and muscle weakness.

26.     On December 18, 2023, Mr. Wade's family were informed that Mr. Wade had fallen out of his chair and that he was taken to the hospital.

27.     As a result of this fall, Mr. Wade sustained a cut on his left eye in which medical glue was used to hold the wound together.

28.     On April 17, 2024, Mr. Wade's lab results said that Mr. Wade had evidence of a urinary tract infection.

29.     On May 4, 2024, Mr. Wade was noted as having an unwitnessed fall in his room.

He was noted to be found on the floor. His fall risk assessment indicated that he had 3 or more falls in the past 3 months and was classified as a "High Risk" with a fall score of 14.

30.    On May 7, 2024, Mr. Wade's family requested that Mr. Wade be tested for a urinary tract infection due to his foul smelling urine. Days after the initial request, Mr. Wade was tested and it was found that he has a urinary tract infection.

31.    During Mr. Wade's stay at Interlochen, his weight dropped from 144.7lbs to 123.9 lbs. This was roughly a 14% decrease in body weight.

32.    On June 7, 2024, Mr. Wade was found unresponsive. He was discharged from Interlochen and transferred to Texas Health Arlington Memorial Hospital. Upon admission to the hospital, Mr. Wade was noted to have a primary diagnosis of sepsis with acute respiratory failure. Mr. Wade was also diagnosed with elevated lactic acid, bandemia, hypoxia on ABG , and elevated troponin.

33.    On June 8, 2024, Mr. Wade passed away with his cause of death as sepsis from pneumonia.

### Interlochen's Profit from Understaffing and the Impact on Resident Care

35. Interlochen gains much of its revenue and profit from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

36.    In the Medicare/Medicaid system, every nursing home resident is assigned an "acuity" level which reflects the number and severity of that resident's medical conditions and illnesses.

37.    A resident with a higher acuity level places a greater demand for care and services on a nursing home and its staff.

38.    Skilled nursing facilities, like Interlochen, use acuity levels to bill Medicare/Medicaid for reimbursement of daily care and services.

39.    Medicare/Medicaid reimburses nursing facilities at a higher rate for care and services based on each resident's acuity rate and number of therapy minutes provided to that resident.

40.    Accordingly, the higher the facility's acuity levels, the more revenue the facility will generate from Medicare/Medicaid.

41.    This creates a financial incentive for nursing homes, such as Interlochen, to admit and keep residents with greater mental, physical, and psychological needs.

42.    Every year, skilled nursing facilities (including Interlochen) must submit a Medicare Cost Report to The Centers for Medicare and Medicaid Services ("CMS"), in which the facility must account for each dollar received and spent.

43.    A resident's acuity level is used by CMS to determine the number of hours the nursing home is expected to provide each day to meet resident needs.

44.    CMS then pays the facility according to the hourly rate of reimbursement for the expected number of nursing hours required for each resident.

45.    At the end of each fiscal quarter, the nursing home must provide CMS with an accounting of the hours it actually spend providing nursing care to residents.

46.    To calculate nursing hours, facilities, such as Interlochen, add up the hours spent providing care to residents by Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and nursing aides.

47.    Throughout the entire period of Mr. Wade's residency (2023 through 2024), Interlochen failed to provide sufficient and expected licensed care to its residents (i.e., care provided by RNs and LPNs) or expected aide care to its residents.

48.	In 2023 and 2024, based on the acuity of its residents, Interlochen provided fewer nursing hours to residents than the anticipated minimum staffing promulgated by CMS.

49.	Center for Medicare and Medicaid Services Payroll Based Journal information for Interlochen shows that between Q4 2023 and Q2 2024, the facility was below the national average and recommended and required certified nurse aide hours nearly every single day,  below the number of Registered Nursing hours for more than half of the days, and below the number of other Nurse nearly every single day of the quarters respectively.

50.	Managers, owners and operators of Interlochen knew the facility was understaffed yet made no corrections to their budgeting to allow for additional needed staff to provide care to Mr. Wade.

51.	As of September 22, 2025, Interlochen is rated 1-star out of 5 overall by CMS, with a 2-star rating for staffing levels and with roughly 35 minutes less of nurse staff hours per resident per day compared to the national average. Furthermore, while the national average of RN hours per resident per day is 41 minutes and the Texas average is 26 minutes, Interlochen only provides 24 minutes of RN hours per resident per day per CMS data.[1]

52.	Generally, clinical studies have shown that understaffing in nursing homes has led to reductions in the quality of care provided to residents, such as Mr. Wade.[2]

53.	For example, a 2023 study[3] examined the impact of understaffing (or staffing "instability") on the quality of care that is provided in skilled nursing facilities, such as Interlochen.

---

[1] Information retrieved on September 22, 2025 from Find Healthcare Providers: Compare Care Near You | Medicare
[2] Harrington C, Edelman TS. Failure to Meet Nurse Staffing Standards: A Litigation Case Study of a Large US Nursing Home Chain. INQUIRY: The Journal of Health Care Organization, Provision, and Financing. 2018;55. doi:10.1177/0046958018788686
[3] Mukamel DB, Saliba D, Ladd H, Konetzka RT. Association of Staffing Instability With Quality of Nursing Home Care. JAMA Netw Open. 2023;6(1):e2250389. doi:10.1001/jamanetworkopen.2022.50389.

54.     In particular, the study found elevated rates of understaffing of both LPNs and nursing aides (referred to as CNAs) is associated with worsened quality of care provided to residents.

55.     Specifically, the study found a statistically significant relationship between LPN/CNA understaffing and increased resident hospitalizations and emergency department visits.

56.     Falls, malnutrition, and infections, like the ones Mr. Wade suffered, are injuries which often require hospitalizations or emergency department visits.

57.     Mr. Wade required an emergency department visit due to the poor care he received at Interlochen.

58.     Here, Interlochen provided below-average staffing to its residents, including Mr. Wade, thereby contributing to adverse patient outcomes to its residents, including Mr. Wade.[4]

59.     This below average staffing, per the literature analysis, leads to increased falls, malnutrition, infections, and accordingly, at a minimum, increased the risk of Mr. Wade, a known falls, malnutrition and infection risk, of developing injuries related to falls, malnutrition, and infections.

## COUNT I
## Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

### SURVIVAL

60.     All of the preceding paragraphs of this Petition are incorporated herein, as if set forth more fully at length.

61.     At all times relevant to this Complaint, Interlochen was acting under the color of

---

[4] Discovery is needed to show how Interlochen's systematic understaffing specifically and individually impacted Mr. Wade. Despite the need for this information, it is a well-studied fact (and, indeed, a logical conclusion) that understaffing leads to inadequate care for residents, like Mr. Wade.

state law and as an agent of the State of Texas.

62.     The Defendants are bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. The Defendants are also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

63.     The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983 as decided by the United States Supreme Court in *Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166 (2023), as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

64.     The Defendants in derogation of the above statutes and regulations, and as a custom  and policy, failed to comply with the aforementioned regulations as follows:

    a.    By failing, as a custom and policy, to provide services with reasonable accommodations of the individual needs and preferences of residents, such as Larry Wade, as required by 42 U.S.C. §1396r(c)(1)(A)(v)(I);

    b.    By failing, as a custom and policy, to allow patients such as Larry Wade to be to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and to participate in planning care and treatment or changes in care and treatment as required by 42 U.S.C. §1396r(c)(1)(A)(i);

    c.    By failing, as a custom and policy, to care for patients, including Larry Wade, in a manner that promoted maintenance or enhancement of his life, as required by 42 C.F.R. § 483.10, 42 C.F.R. § 483.24, 42 U.S.C. § 1396r(c)(1)(A)(xi), and 42 U.S.C. § 1396r(b)(1)(A), as pled herein;

    d.    By failing, as a custom and policy, to provide residents, including Larry Wade, the necessary care and services to

allow him to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

e. By failing, as a custom and policy, to periodically review and revise patients' or residents' written Care Plans, including Larry Wade, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

f. By failing, as a custom and policy, to conduct an assessment of patients or residents, including Larry Wade, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

g. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising patients' or residents', including Larry Wade's Care Plan, as required by 42 U.S.C. § 1396r(b)(3)(D);

h. By failing, as a custom and policy, to ensure that patients and/or residents, including Larry Wade, were provided medically related social services to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

i. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents, including Larry Wade, was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

j. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Larry Wade, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

k. By failing, as a custom and policy, to ensure that Interlochen was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Larry Wade, to attain or maintain

10

their highest practicable level of physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C);

l.   By failing, as a custom and policy, to ensure that the administrator of Interlochen met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

m.   By failing, as a custom and policy, to develop, implement, and maintain an effective training program for all new and existing staff, contractors, and volunteers, consistent with the individual's expected roles, as required by 42 C.F.R § 483.75 and 42 U.S.C. § 1396r(f)(2)(A)(i), as pled herein;

n.   By failing, as a custom and policy, to develop and implement written policies and procedures that prohibit the mistreatment, deliberate indifference, and abuse of residents such as Larry Wade, as required by 42 U.S.C. § 483.12 and 42 U.S.C. § 1396r(b)(1)(A);

o.   By failing, as a custom and policy, to provide nursing staff who are adequately trained and competent to provide nursing and related services to assure the safety and wellbeing of residents, including Larry Wade, as required by 42 C.F.R § 483.35, as pled herein;

p.   By failing, as a custom and policy, to ensure that Interlochen was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Larry Wade, and in operating such a facility as Interlochen, as required by 42 U.S.C. § 1396r(d)(4)(A); and

q.   By failing, as a custom and policy, to ensure that Interlochen's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Larry Wade, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

65.   As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent was injured as previously referenced, and suffered pain and distress as a result of Interlochen's poor care and treatment, which

11

allowed him to suffer harm as described herein. As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

      a.     Pain, suffering, inconvenience, anxiety and nervousness of the Plaintiff's Decedent;

      b.     Hospital, medical, and nursing expenses incurred on Plaintiff's Decedent's behalf;

      c.     Other losses and damages permitted by law; and,

      d.     Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Gracie Marshall, on Behalf of the Estate of Larry Wade, demands damages of the Defendants Fannin County Hospital Authority d/b/a Interlochen Nursing & Rehabilitation Center, Arlington I Enterprises, LLC, and Creative Solutions in Healthcare, Inc. in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

***/s/ Jacob N. Runyon***
Jacob N. Runyon
SMITH CLINESMITH, LLP
325 N. St. Paul, 29th Floor
Dallas, Texas 75201
(214) 953-1900 – Telephone
(214) 953-1901 – Facsimile
jacob@fightingelderabuse.com
service@smithclinesmith.com

12